TAI LUNG CO. *v.* UNITED STATES (No. 3248)[1]

United States Court of Customs and Patent Appeals, April 29, 1930

*Allan R. Brown* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.

---

[1] T. D. 44004.

[Oral argument February 13, 1930, by Mr. Brown and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise, the classification of which is here in dispute, consists of footwear known as a Chinese slipper with leather sole and straw upper. It was returned for duty at 35 per centum ad valorem under paragraph 1405, Tariff Act of 1922, which paragraph reads as follows:

PAR. 1405. Boots, shoes, or other footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, or silk, or substitutes for any of the foregoing, whether or not the soles are compose of leather, wood, or other material, 35 per centum ad valorem.

The appellant claimed the merchandise to be free of duty under paragraph 1607 of said act, which reads:

PAR. 1607. Boots and shoes made wholly or in chief value of leather.

It is conceded that the article is in chief value of leather.

The United States Customs Court overruled the protest and affirmed the collector's dutiable classification of said merchandise. It is conceded by both sides that if the goods are described in paragraph 1405 they should be classified under same, the sole question in this case being: Are the goods described in paragraph 1405?

The Government contends that the straw uppers are used as substitutes for the same use as the other named materials. In the Government's brief it is said:

Moreover, it must be admitted that the straw uppers hold the soles of the slippers to the feet in the same manner as do the uppers which are specifically named in the said paragraph (1405). It must be also admitted that the said uppers are "composed wholly or in chief value" of straw.

In argument before this court, Government counsel departed somewhat from the position indicated by the quotation from the brief, but contended that straw was used as a substitute for one of the materials.

The importer artfully argues that straw slippers serve a purpose of their own and that they are not substitutes for anything else and that they would not take the place of anything else; that straw slippers have existed side by side with other slippers for many years.

We can not agree with the position which the Government took in its brief to the effect that Congress by the use of the words "substitutes for any of the foregoing" meant that any material would be a substitute if uppers were made of it and used for the purpose of holding the footwear to the foot. To adopt this meaning would be to

have the paragraph read substantially "boots, shoes, or other footwear, the uppers of which are composed wholly or in chief value of any material." For reasons which are obvious the legislature can not be presumed to have used the language of the paragraph in that sense. For some reason Congress provided that boots, shoes, and other footwear, the uppers of which were made of certain materials or their substitutes, should be dutiable at 35 per centum ad valorem. It recognized that there was a large class of shoes the uppers of which were made of different kinds of material other than leather, such as tennis shoes, bath slippers, Chinese clogs, overshoes, etc., and if composed of certain materials, or materials which could be substituted for those certain materials, it intended that they should be dutiable at the rate of 35 per centum ad valorem.

The question presented, therefore, narrows to—Is straw, which composed the uppers of the footwear in controversy, a substitute for either wool, cotton, ramie, animal hair, fiber, or silk? The word "substitute" as used here means *to take the place of* (see Webster's New International Dictionary), and we do not think it means to take the place of an upper but to take the place of the material in the upper. It is pointed out by the importer that straw and fiber have been distinguished for dutiable purposes. It is very true that straw for tariff purposes is not fiber, but that is no reason why Congress did not intend here for straw to be a substitute for fiber. Ramie is the fiber of a plant. A vegetable fiber is a threadlike part of a fibrous plant which when separated from the plant is often woven or spun into articles. (See Webster's New International Dictionary.) The characteristics and uses of vegetable fibers are, in many instances, quite similar to those of straw. Taking into consideration the nature and use of the footwear as shown by this record, we think the straw is a substitute for either fiber or ramie, and that it is, therefore, aptly provided for in paragraph 1405 and is dutiable thereunder.

The judgment of the United States Customs Court is *affirmed.*

GRAHAM, Presiding Judge, concurs in the conclusion.

GARRETT, Judge, dissents.